and we'll hear from, I guess, Ms. Utrecht. Good morning, Your Honor. Jennifer Utrecht on behalf of the government. Your Honor, in Webster v. Doe, the Supreme Court held that the National Security Act commits to the director of CIA and ODNI's discretion the decision to terminate agency employment. That's a decision that is committed to discretion by law, and it precludes District Court decision to terminate agency employment.  There are two problems with the District Court's reasoning here.  APA claim into a constitutional one, and the second is that the District Court has violated its own regulations. Notwithstanding this, the District Court here has enjoined the directors from effectuating the termination of CIA and ODNI employees, concluding that plaintiffs were likely to succeed on the merits of their claim, that the agency failed to follow procedures set forth in internal agency regulations. There are two problems with the District Court's reasoning here. The first is that the District Court fundamentally erred in transforming an ordinary APA claim into a constitutional one, and the second is that the District Court fundamentally misconstrued the regulations on which it relied. Those are related problems, so I think I would like to start with the text of the regulation itself. It seems to me that it was the agency itself that transformed what happened here, because the agency executed a reduction in force and then decided, no, that's not what we're doing, we're terminating all these people under our broad authority. And that decision wasn't made until after the lawsuit was filed, ironically. So respectfully, Your Honor, I believe in the JA itself there's a letter from, both a letter and a declaration from the director stating that he had made a determination. Right, and that was after the lawsuit was filed. The initial memos talk about a reduction in force, don't they? I know the declaration you're talking about. No, but there is also a memo that says that the director has deemed it necessary or advisable in the interest of the United States. And is that the January 23rd memo? Yes, ma'am. All right. And also, that's after the prior memos that indicated this was a reduction in force consistent with the OPM. So I think it would be helpful, Your Honor, to take a step back here, because the question of whether this is a reduction in force or not is really irrelevant. And the reason for that is, because as the Supreme Court said in Webster, when the director makes the determination, when the director deems it necessary or advisable in the interest of the United States, that is an unreviewable decision. And second, I would also note, I mean, I would like to point to the regulation itself, if we can. But that's not what the director said when he initiated the reduction in force consistent with the President's executive order. To be clear, Your Honor, plaintiffs have not disputed here that the director did indeed deem it to be necessary or advisable in the interest of the United States, pursuant to his authority under the National Security Act, the termination of plaintiff's employment, that it was necessary or advisable. That is not a disputed fact here. And so what we're left with is the district court's reasoning that, well, the only reason, the motivation that the director had was that the President had closed these offices and said that these employees should be terminated. And I don't... But wasn't that the motivation? So first of all, Your Honor, I think the fact that the President has advised or provided his own opinions to the directors doesn't change the fact that this was an independent decision made by the directors, that it is still... The memo says it was as a... The initial memo says it was as a result of the executive order. The declaration probably says that, too. So absolutely, Your Honor. I mean, so that doesn't... I guess what I'm hearing is that the director can just rewrite history any time he wants. And here it was after the lawsuit was filed. He decided to suddenly make a declaration that he did something he clearly did not. Under oath. So I would direct Your Honor to page 73 of the joint appendix, February 18, 2025. This is the memorandum that was sent out directing these employees to receive the notices that they did. What page was that? What date was that? February 18, 2025. When was the lawsuit filed? The day before. Was it? Yes. So then, back to my question, the director can just rewrite history after the lawsuit's filed? Is that... Can the director just do... Just make up a new reason after the lawsuit's filed? Your Honor, the second thing that I would like to point to... You can say the second thing after you answer my question. I don't think it's rewriting history, Your Honor. The fact that there wasn't a public record... What did the first memo say? Did they say reduction in force? I don't believe there's anything that said reduction in force, Your Honor. If you could point me to it... I will. Go ahead with your second thing you wanted to say. Okay. So, second of all, Your Honor, and again, I'd like to look to the text of the regulation itself. So, to have a protected property interest under the Constitution, there has to be some source of positive law that gives plaintiffs an independent substantive right that limits discretion in some way. The regulation on which the district court relied several times disclaims any such property interest. So we're looking at 2A of the regulation. Okay, so the January 21st memo from the director where the director's directing people on what to do says on page 2 of it... Which page of the JA is this, Your Honor? It's the... I'm not looking at a JA site right now, but I'll find it. It's the January 21st, 2025 memo from Edsel, acting director. Oh, Your Honor, that's not from the director of the CIA. That is an OPM memorandum. All right, but the declaration refers back to the OPM memorandum, doesn't it? Absolutely, Your Honor. The director said although the director doesn't have to provide his reasons for why he deemed it to be necessary and advisable in the interest of the United States, he said that his decision, his indiscretionary decision, was informed by the president and the OPM memorandum. Now, of course, the fact that his... Informed by and yet at odds with the OPM memorandum. Well, so the... I think it would be helpful to just clarify. The OPM memorandum was provided to all agencies across the government, including agencies who are subject to the Civil Service Reform Act protections, which CIA employees are not. And so there is a separate set of statutory guidance and regulatory guidance as to how to conduct a reduction in force in those agencies. There is no such equivalent statutory protections for CIA employees. And so really the OPM memorandum doesn't have any actual effect here. What does have, and I would remind this Court, that the district court's reasoning here was that the CIA's own regulations required some sort of reassignment in these circumstances. And again, I would point, Your Honor, to several times throughout those regulations... But those regulations don't apply if it's the decision of the director. Correct. Not only do they not apply if it's the decision of the director, several times... I'm quoting from Section 2A. It says, agency employees do not have tenure and their employment may be terminated without regard to the procedural requirements of this regulation. They are non-binding steps that do not bind the agency. They do not create a property interest of the type that's protected by the United States Constitution. And... So the declaration then at JA 148 says, I understand that these directives, those in the OPM memo, and apparently the executive order from the President, because that's cited in that same paragraph, in combination, effectively prescribe terminating the employment, prescribe, terminating the employment of these employees. Therefore, I decide to do the opposite and terminate these employees. So again, Your Honor, I think that question is really getting into whether it was an abuse of the director's discretion to terminate these employees or to deem it necessary or advisable in the interest of the United States. Am I understanding that correctly? That the director acknowledged that the OPM memo and the executive order in combination prescribed, P-R-E-E, prescribed terminating the employment of the employees. Prescribed? That's what it says on paragraph 3. Again, so on page 73 of the JA, which is the memorandum, it says that he's making the decision to terminate them because he's deemed it to be necessary or advisable in the interest of the United States to best effectuate the President's direction. And that's the February 18th memo, right? That's the February 18th. And then the declaration, let me just pull up the exact page, I'm sorry. It's JA 148. It's JA 148. What JA 148 says is that these offices have been closed pursuant to the executive order that OPM has provided guidance on how to conduct reductions in force. And the guidance was reductions in force. And yes, it says that these directives in combination effectively prescribed terminating the employment. That's correct. But what's lost in that sequence is that while the President made some directives and OPM made some instructions how to do it to the various agencies, when each agency is carrying those out, they have their own criteria. Absolutely. And Congress was very careful to make sure that the CIA director could terminate somebody even on a hunch or for no reason or for all reasons. Correct. The idea, he suspects somebody's a mole. He doesn't have to say a thing. There's no process. He can get rid of them. And that's been, we've litigated that before. That is absolutely correct, Your Honor. And it's just applicable to the intelligence agencies. Yes. For a lot of good reasons that Congress found. So when it comes to these two agencies, the director had absolute authority, unreviewable authority to terminate. That's correct. When it comes to another agency, they may have to follow RIF rules. And maybe there's another agency that you have other rules that are applicable. But in this case, there's simply no, if a lower level CIA person terminates somebody, they can appeal to the director. If, say, a lower level supervisor says somebody's being terminated for something, theft or whatever it is, that employee can appeal to the director. But whatever the director says, Congress wants him to have that absolute authority. And I don't know how a court has any constitutional authority, statutory or constitutional, to review the director's decision to terminate people. I agree. He can terminate half the staff if he wants. And to add on to that, Your Honor, I agree with everything that you said. Congress has vested this in the But you haven't emphasized the fact that the director has that congressional authority from Congress. The reason that I haven't been emphasizing it, Your Honor, is because the district court itself recognized that. That's not, I don't, we're not disputing the fact. The district court was concerned about AR what number is it? 416. 416 that provides for procedures for termination of excess personnel. And what the district court said is if you have a procedure, you have to follow it. And what the district court found, as a matter of fact, and we defer to findings of fact of district courts, particularly when we're here on abuse of discretion, standard of review, in a preliminary injunction context, the district court said, I find this was a reduction in force based on the facts that it presented to me. And so if it is a reduction in force, then there is a provision in the regulation that provides for termination of excess personnel and for a procedure for an appeal. And so that's what the district court found. Under Arcadi, the procedures, if they exist, need to be followed. And as a response to that, Your Honor, I mean, starting with the preposition that the director's decision as a statutory matter is committed to his discretion and the motivation. When discretion is being exercised. But here what the district court found as a factual matter is this wasn't a discretionary decision. It was a rift. So, Your Honor, again, Webster tells us... Why don't you point out that the procedure is a procedure to apply to the director. So, yes. That's the only procedure. And if the director made the decision, there's no procedure for him to review his own decision. Yes. Yes, Your Honor. My first response to that question is Webster tells us the motivations of the director do not matter. When the director makes the decision as a statutory matter is committed to his discretion. And as to the regulations, the district court fundamentally, and this is not a fact finding, this is a question of law, the district court fundamentally misconstrued the regulation. The regulation itself says that agencies can be fired for any reason without regard to these procedures. Section 2D says when the director makes the decision to deem it necessary or advisable in the interests of the United States, that he may do so without regard to any of the procedural steps in this regulation and that those employees may be fired without regard to any of the... And he doesn't have to say why he deems it in the interest of the United States to fire everybody in the diversity, equity and inclusion office. The regulation does not require any explanation to be given. Again, I'm quoting from the regulation here. This is on page 62. It is not required that an employment termination under the statute be in the interest of national security, but only that the director in his discretion deem it to be in the interest of the United States. It then goes on to say that the director need not provide the reasons, that this is entirely... But if the director does provide the reasons, that's what happened here. There was a change in essentially reading the documents. Initially there was a reason provided. And the reason provided was to eliminate an entire section and declare these employees access to the needs of the career civil service, which is exactly what the regulation provides. I actually have a different question, if I may. I'm wondering what's the status of the terminations now? Has the injunction been complied with? So the injunction just prohibits us from effectuating the terminations. Well, the injunction also requires that the individuals be provided an appeal. Before they are terminated. An appeal process. Right. But none of the... There has been no procedure because we have elected to pursue this appeal rather than to moot out the case. Was the injunction stayed pending appeal? We did not request a stay. And part of the reason for that, Your Honor, is because all of the employees who were affected by this decision were afforded options including taking the deferred resignation. Many of them would not have had an end date of employment until September. And so there was no urgency when this appeal was first filed. So even though the order specifically says it is further ordered that the defendants provide plaintiffs a requested appeal from any decision to terminate, there was no, in fact, no provision of an appeal. The injunction says that we cannot fire anyone until those procedures are complied with. And we have not fired everyone. Everyone affected by the injunction remains officially... I don't know why you don't get to the fundamental question. It seems to me that the procedure the district court was focusing on is when somebody is terminated they have a right to appeal to the director. And the director's decision is final and appealable. And that's the only procedure. There's no appeal when the director makes the decision. I agree, Your Honor. The regulation doesn't provide that. I agree, Your Honor. Well, you haven't said that. And that's the problem with the district court's order. I think I've said that a couple times. I'm sorry if I haven't said it clear enough, Your Honor. The fundamental problem with the district court's order and, again, the question of whether this is effectively a reduction of force doesn't matter because under Section 2D... It doesn't matter whether it's a reduction of force, whether the President ordered it, whether he liked to do it, whatever reason, Congress gave the intelligence agency directors absolute authority to get rid of employees. And there are a lot of good reasons for that in the intelligence community. And he's unanswerable and Congress has made him unanswerable. Now, if a lower-level employee terminates somebody at the CIA, there is a right to appeal. There is a procedure that goes to the director. But the director is the end of the line. And in this case, the director made the decision and there's no appeal from that. Correct. I've been focused on the regulation... The idea that there's an order for appeal is nonsensical because he has to appeal to himself. Absolutely, Your Honor. I've been focused on the regulation as a whole because the district court found that this right was found in the regulation. But the regulation itself... I'd also note that this was at issue on remand in Webster itself when the Supreme Court said that there was a constitutional claim that could proceed. The D.C. Circuit, in that case, looking at a fundamentally identical regulation, an earlier version, said these procedures for the various steps that are taken apply in the ordinary course when lower-level officials are making decisions. But as a whole, the regulation makes abundantly clear that when the director has made the determination, has deemed it necessary or advisable in the interest of the United States, that none of the procedures apply, that none of the procedures have to be in Section 2A, it's in Section 2D, it's in Section 2F, it is repeated... And the procedures not only don't have to be complied with, it's nonsensical to make it apply, but there's also no appeal from it. The appeal... So, for example, the Section 2E, which the district court discussed, which is the appeal decision, says that a decision can be appealed to the chief operation officer. Well, that doesn't make any sense in the context of a decision made by the director. Why would the decision be appealed to a lower-level official? Same thing with the reassignment procedures under Section 2C. You have a head... It says if a head of component, which the director is not, if a head of component determines that an employee is in excess to the needs of the service, there are various things that have to be considered and various reassignment considerations before... that have to happen before the employee is terminated. Of course, the director is not a head of component, and it contemplates a process that goes up to the chief operating officer. Again, that doesn't make any sense when you're dealing with a decision made by the director himself. Why would that decision be subject to review by a lower-level official? Taken together, the regulations make abundantly clear that although there may be some circumstances where a lower-level official makes a determination when these procedures apply, when it is the director himself consistent with the broad statutory authority that Congress has provided, there is no procedures that apply, and therefore there cannot be a constitutional due process claim as the district court here held. Thank you. All right, Mr. Carroll. Good morning, Your Honors. May it please the Court, I'm Kevin Carroll, and along with my associate, Keira Hama, we represent 19 officers who are facing termination from the intelligence community. What's their status right now? They are on paid administrative leave, Your Honor. Your Honors, I think that a critical distinction that's been missed by my friend is that there's a difference between the director's authority to terminate someone on the spot and what post-termination remedies may be. Judge Niemeyer, you hit the nail on the head that the reason why Section 3036, 50 U.S.C. 336 exists is because there could be a mole in CIA. Well, it's not just a mole. There's all kinds of reasons. Congress spent a lot of time thinking about the CIA and the ODNOI, and those statutes are parallel, and if you didn't do this, you would end up not only a mole, you'd have compromises, somebody who's leaking, all kinds of other things. You don't want to have hearings on this stuff. It's all very secret. The very fact you engage in procedures are problematical. But in this case, the district court got caught up in the procedure that takes a matter of firing to the director, and that's the procedure that was invoked. But in this case, it wasn't a lower-level firing. The director himself did the firing, and there's no level of appeal in the regulations above him, and he has absolute authority. So that, to me, is the problem with the district court's order. There's just no constitutional issue or APA issue when the director makes that decision. And I don't know what your response to that is. I have three responses, Your Honor. First, you're absolutely right. There could be a circumstance not just a mole, a leak, or something like that. That's just background for the statute, but the statute repeatedly talks about the absolute authority, the lack of procedure, the unreviewability the director has, and he has to have it. And he exercised it in this case. Your Honor, it refers to the lack of procedure to terminate, not to post-termination procedures. And you're right, Your Honor. The CIA officers at the IGINS also, for example, are unique here in that they can't bring APA claims. They can't go to the Merit Systems Protection Board. So a due process claim is the only outlet that's available to them. And Your Honor, I think it's relevant that the director referred to a reduction in force, and he referred back to an OPM memorandum that described it as a reduction in force. Those were the requests that came down, and if you trace the request, the President wanted this terminated. The OPM, which is the Director of Personnel covering many agencies, issued a memorandum as how to carry that out, and that went to the CIA, and the CIA director says, refers to this, that this is the wish of the President, and the CIA director exercised his authority to terminate. And his authority is granted by statute. He's not functioning under an OPM regulation. He's functioning under congressional statutes creating the CIA and the O.D. Office of Intelligence. Your Honor, I still think it's relevant that the OPM memorandum is entitled Guidance Regarding RIFs of DEI Officers. Well, sure. Some agencies have to follow those. Some agencies don't. Your Honor, the CIA has regulations involving RIFs, and they provide post-termination relief of an appeal to the director, and... Appeal to the director? Yes, Your Honor. All right. That's the end line. Now, here we don't have any action, lower action, that can be appealed to the director, because the director made the decision. There is no appeal, period. Correct, Your Honor. It's not the only right they have, though. They have the right to appeal, which, you're right, it's unusual. And that's what the district court relied on. The procedure wasn't followed, and ordered an appeal, and it's... If the record is listened to, or focused on, it doesn't make sense that you direct the director of the CIA to appeal to himself. But, Your Honor... He goes into his office, and what does he, look at the wall, and then say, I stick with my decision? Your Honor, there was a second right that Judge Tranga referred to, and that's the right to be given an opportunity for reassignment in the organization. And that was critical to the court that was holding it. You don't have that under, you do not have that when the director files, makes a decision. You do not have that. Your Honor, you have it... It's irrelevant. You have it under the regulation regarding RIFs. And the reason why it's inappropriate here for the director to have used this Section 3036 authority... The director didn't create a RIF. The director just fired these people. Your Honor, it's, I think it's... OPM talked about it, because some agencies have RIFs, that had to do RIFs, but the CIA is a special agency, and when the director makes that decision, why would he go through, say, okay, I'm going to issue this to my, this officer or that officer to look at this and so forth. He made the decision in this case, which eliminates all of that procedure, which involves an appeal to him. Your Honor, I think it's important that this Section 3036 authority has never, to our knowledge, ever before been used against more than one officer at once. It's never, to our knowledge, ever been used for other than a counterintelligence purpose. And here, suddenly, an entire office was fired because they work in diversity and inclusion. And somehow, now that is in the interest of the United States, to fire people because they worked in a diversity and inclusion office. Yes, Your Honor. And this is why a right of review is so important. Some of the individuals were not actually working in the diversity office. One of the appellees was still in the onboarding program at CIA. She was just identified for future onward assignment to the DEI office. Another one of the officers was simply involved in recruiting. Not DEI recruiting, just recruiting. After you're in a law firm, you're doing your responsibilities as a partner. You might also go recruit law students one day. He was not a DEI officer. None of them, Your Honor, are DEI officers. They're all career intelligence. What difference does that make? He doesn't have to give a reason. He doesn't have a reason. He doesn't have to have a reason. Your Honor, he didn't have to give a reason, but he did. He gave a reason saying that I'm doing it pursuant to an OPM memorandum. I understand, but whatever reason he gives is not reviewable because he has full discretion. Your Honor, I mean, the statute can't make it clearer. I mean, I don't have the exact language, but it repeatedly says that. Yes, Your Honor. And I believe that that discretion is cabined to the emergency situation you pointed out, where somebody might have to be taken off the system right at all. It's not cabined at all. Congress did not cabine it. They didn't even cabine it to national security interest. Correct, although they did say... In the interest of the United States. That's the only thing to eliminate the interest of a person. Your Honor, the Webster Court did cabine it in another way, in that they said that despite Section 36 authority, the director can't fire people for unconstitutional reasons. He could not, for example, say I'm firing all African Americans or all women. And here they're firing people in derogation of two due process rights. Their property interest under a cardi of having the agency follow its own regulations and also their liberty interest in being able to pursue their profession. What regulation wasn't followed? The regulation regarding risks, Your Honor. But leaving that aside, there's the separate due process claim involving stigma plus. So here individuals have a liberty interest in being able to... Well, firing somebody doesn't create a stigma. Laying somebody off or letting them go unless you say they stole something and made it a public thing. Your Honor, that's exactly right. Wouldn't firing, wouldn't the CIA director firing an intelligence officer because he deemed it in the interest of the United States have a stigma to that intelligence officer? Absolutely, Judge Thacker. And it goes well beyond that. The statements that were put out by the White House about the athletes, I would take up all my time if I were to read the whole thing off, said that they were engaged in immense public waste, shameful discrimination, dangerous, demeaning... Illegal and immoral. None of you would hire a clerk who'd been described by the President of the United States as having been involved in illegal, immoral, un-American activity. I wouldn't hire him on my law firm either. And that's exactly how these people have been defamed with a stigma plus claim by the President of the United States. You didn't sue the President. You sued the Director. I thought there might be some Presidential immunity issues involved that are up in the air, but certainly the Director that fired them pursuant to this statement is responsible. And we didn't sue him in his personal capacity either. Your Honors, I'd also say that again to emphasize, my friend said that the Director's authority is totally unreviewable. It's not for constitutional violations. And a constitutional violation is prima facie represents irreparable harm. As one of Judge Accus, Judge Thacker said, the CIA Director here is saying that his decision to terminate the individuals is informed by, but not in accordance with, the memorandum that refers to RIFs. Right. That's in his declaration before the Court. Paragraphs 3 and 4. I think, again, this is a mess of the Director's own making. If he's going to refer to a memorandum regarding RIFs and describe things as RIFs, then he has to follow the agency regulations that do exist around RIFs. Your Honor, also... But what about the broad authority that opposing counsel refers to? The Director can do anything he wants, without any reason, at any time. Yes, Your Honor, regarding termination, but not involving post-termination rights. For example, there have been situations in CIA where somebody has been falsely accused of being an agent. So you're saying, yes, he could terminate, but there have to be some post-termination rights. Precisely. Even under that broad authority? Precisely. For example, in the case of a couple of these affilies, the Director is saying, you're fired because you're a DEI officer assigned to the DEI office. Actually, no. Some of them are not. To go back to Judge Niemeyer's mole example, somebody could be accused of being a mole, they need to get off of CIA information systems... He doesn't have to accuse him. He may just suspect him. If he suspects him. And he has a sense. Accusing him, even letting anybody know that that's the issue, will reveal information in the intelligence community. And, Your Honor, that officer should have a right and should have the ability to appeal that determination to the Director. And there's no exception that I read in the appeal provision for decisions that are made by the Director himself. The appeal provision, even though it is to the Director, I mean, plausibly the Director could change their mind. And I imagine there are situations where the Director does change their mind after exercising discretion to terminate an individual. Exactly, Your Honor. This Court has the authority to make the decisions it wants, and a litigant has the ability to ask you to reconsider that decision. Are you saying that the regulation provides that a decision by the Director can be appealed to the Director? Yes, Your Honor. Where's that? I mean, that is nonsensical. Your Honor, I don't think it's nonsensical. It's like a motion for reconsideration. Exactly, Your Honor. And I believe it's Section 3036E2. The Director can be asked to reconsider his decision as would frequently be appropriate when there's been a mistake of fact made, as in the case of some of the I could ask for reconsideration, but there was never a request made. The District Court relied on a regulation that provides an appeal to the Director of decisions made by members of the agency. Your Honor, it was interesting to me at the hearing in which Judge Schrengen denied the injunction. He said, I trust that in good faith the Directors will review their decision and look if there's an opportunity for these officers to serve elsewhere in the individual community. Then the Director sent a memorandum, or perhaps it was the Department of Justice sent a memorandum saying, no, Judge, we absolutely refuse to review the decision and we refuse to consider whether there's any reassignment rights here. And that is when Judge Schrengen put in the injunction. So if the government had simply followed Judge Schrengen's politely phrased order to reconsider his decision and see if there were other places these people could work, we wouldn't be here today. And again, Your Honor, as far as individualized determinations, one of the employees is a data scientist. Data scientists are a very hot commodity in the entire economy. Much less one's willing to take the pay cut to go into the intelligence community. And when this happened, when word got around that everybody in the DEI office was going to be fired, eight other components in CIA offered jobs. Eight. So there was ample opportunity for her to continue to serve her country. Continuing on in the CIA, she'd actually accepted an assignment to return to the counterterrorism duties, which she'd previously done. And that's exactly the sort of good faith review and reconsideration that Judge Schrengen called for. And I think was a reasonable basis for an injunction. And have any of your clients sought reconsideration or review? Yes, Your Honor. Because the Director of National Intelligence, Director Gabbard, did not send a letter similar to the one sent by Director Ratcliffe of CIA, we did submit requests for review and reassignment on behalf of the two appellees who are OD&I personnel. And OD&I said that they'd received it, and then there was no substantive response beyond that. And that was after the injunction was in place? That was, I don't want to get this wrong, I think it was between when Judge Schrengen said you should give them rights of repeal and consideration and when the injunction came down. Yeah, it was for sure. Because Judge Schrengen references it briefly in his opinion that OD&I had said they were open to appeal and had received an appeal but hadn't acted upon it. And, Your Honor, I think Judge Schrengen was exactly correct when he pointed to the great expense that the taxpayer goes to to recruit, vet, onboard, train, give people experience in the CIA. He's substituting his own judgment for that of the Director. I mean, that doesn't carry any weight. Your Honor, I think the District Judge does have the authority to look at what's in the presiding judge of the Federal Intelligence Surveillance Court at the moment. So when it's his view that it's in the public interest for there to be some reconsideration, I think that should be given some weight. Well, if we affirm the District Court here, would we be doing any harm to the Director's ability to terminate at his discretion employees in the interest of the United States? Not at all, Your Honor. Why not? Because we're not contesting that the Director has the authority to fire somebody on the spot. Just that the individual could come back and ask for that decision to be reviewed if it had been made on the basis of a false set of facts, for example. Or in this case, when they're saying there's a reduction of force going on but eight other organizations within the CIA want the young lady's services. I am concerned a bit with the breadth of the District Court's injunction order that the District Court seems to be requiring the Directors to submit termination decisions to the Court for approval prior to acting upon them. That does strike me as unusual at best. Yes, Your Honor. I can't get inside Judge Trenka's mind, but I think it's because the government ignored his instructions at the earlier hearing to please in good faith give reconsideration and review. Where does the Judge have the authority to get involved in decisions which could involve the national security? Judge Trenka does it every single day with the Foreign Intelligence Service. He's not acting under the authority of that FISA. I mean, that's a red herring. He's governed by the statutes that govern the Director, and the Director is given broad authority because of the nature of his job. And to have a District Court Judge say that he has to consult with the Court before he makes a decision seems to me a real interference in the most fundamental executive function of the Director. Your Honor, I'd analogize by saying it happens every day. There's Federal Judges that supervise. You can appeal under procedures that get you to the Federal Court, but you can't second guess a Director that Congress gave authority to dismiss, especially if it involves national intelligence. And that statute involves everything. It involves firing a mole. It involves firing and doing everything. Judge, I'm from New York, and the New York City Police and Fire Departments have had Federal Judges and Federal Monitors involving in their hiring and firing decisions, their promotion decisions, police disciplinary decisions. I wouldn't equate the Police Department with the CIA Director. They're both involved in life and death national security work, especially in New York City, Your Honor. Your Honor, I think, getting back I think to one of Judge Berner's concerns, I don't think there's a risk of this injunction going too far, because one of the things Judge Trengel was careful to do was say that his ruling was limited only to the facts of this case, and only to Agency Regulation 14-6. So while this body of 19 appellees is somewhat large, I'll admit, it's not as if Judge Trengel has tried to extend his ruling here to the entire Federal workforce or something. You know, it's something that the government has argued here, is that this is just a generic employment law case, and if you find that a party gives a constitutional right to agencies, government agencies following its own rules, that everything will come before the Federal courts. The problem here is that the government is saying one thing and doing another, I think. I mean, even in the declaration of the Director before the court, paragraphs 3 and 4 are just an inch away from each other. The Director says, in order to effectuate the directives of the Executive Order and OPM Memorandum, and the OPM Memorandum says that it is it's titled Guidance Regarding Reduction in Force, and it directs the agencies to execute a reduction in force. And then the Director says he's effectuating that directive to issue a reduction in force by just terminating it under his discretion. I can't square those things. I see my time has expired. May I answer your question? I can't square it either. And as Judge Niemeyer said, the Director didn't have to give a reason, but having given a reason and saying it's a RIF, we believe that it's reasonable that he has to follow regulations. And where did he say it was a RIF? He said he was doing it pursuant to the OPM Memorandum that describes it as a RIF, Your Honor. He said they asked that it be terminated. He didn't say he was doing a RIF, did he? He didn't. He said in paragraph 4 of his declaration, I therefore determined that in order to best effectuate the directives of the Executive Order and the January 25th Office of Memorandum with respect to the CIA, and the Office of Memorandum from the OPM says it's a reduction in force. Precisely right, Your Honor. And then he turns around and does the exact opposite. Exactly, Your Honor. And we'd ask you that the Court allow the injunction to stand that these 19 good Americans are allowed to continue serving our country. Thank you. All right, Ms. Littreck. Thank you, Your Honor. I'd like to start by clearing up a factual misunderstanding. At the time plaintiffs filed their complaint here, there had been no terminations. All the plaintiffs had been put on administrative leave and no decision had been made to terminate them. And so the fact that the Director the next day That was all a reduction in force stuff. No, Your Honor. They had been placed on administrative leave because their office had been closed under the Executive Order and there was still confusion about what to do with them. They were fired by the, or there was an announcement that they would be fired by the Director, and in that memorandum that went out on February 18th, the Director made the determination and said I've deemed it in the interest of the United States. Because the Director made that determination, that decision, why it was done, is unreviewable by this Court. What we're left with here, and again, this is the narrow holding. But I still can't tell even reading the declaration why it was done. The Director says it was done to effectuate the directive of the OPM memorandum, which was a reduction in force. The Director said. And then acts like it's not a reduction in force. So the Director in the declaration, again, this is after the original memorandum on February 18th, in the declaration said it was effectuating both the Executive Order and the OPM memorandum. Right. And because of that, he had deemed it to be in the interest of the United States. And again, the fact that he. And what does the, doesn't the OPM memorandum require Federal agencies to execute a reduction in force? So the OPM memorandum, which applies broadly across the board to agencies that do have reduction in force restrictions. I'm just reading from the Director's declaration. I understand, Your Honor, but again. That's what he says. It's not a very long one. You'd think he could be consistent or get it right in a three-page, five-paragraph declaration. I think the reason. He didn't have to say all this in paragraphs three and four. You're correct, Your Honor. Because he does have broad authority as you indicate. All he really needed to say was that last part. I'm exercising my authority. Exactly. And that's all that matters. Because he said that. It would have been. But he gave up the reality of what he was doing. So, Your Honor. So now we know. Two problems. The first is that by statute, it doesn't matter what the Director's motivations are. As long as he has made the determination, it is unreviewable. So then what we are left with is the question of whether the regulations prescribe the Director's discretion in any way. And this is where the District Court just fundamentally misconstrued the regulation. You cannot ignore the fact that Section 2D of the regulation states that when the Director has deemed it necessary or advisable. I know, but I also can't ignore that the Director himself said that he's effectuating the directives of the Executive Order in the January 24th OPM Memorandum. If he hadn't put that paragraph in there, then it would have probably been within his broad discretion. The only reason we're having this discussion is because the District Court thought that if this was a RIF, the procedures under C-4 apply. But the problem is that several times throughout this regulation, it says that when the Director makes the decision, when it is the Director himself's decision, it's an abrogation of all of the other procedures in the regulation and that he may do so without respect to any of them. And it's not just once. It's three times. No, I understand all of that broad discretion. It's just the way the Director describes what he himself is doing belies your argument. I don't think he does at all, Your Honor. He's terminating people under a RIF because they work for a DEI program. So, the only question... Not because they were spies or moles or anything else, although for sure people are going to think that after the fact. Just to be very clear, Your Honor, the statute does not require there to be a national security interest for the Director to do it. No, I understand all that. I just don't know why whoever wrote this declaration wrote it the way they did because it's... And if Your Honor's concern is that you're uncomfortable with the Director's motivations for deeming it... I'm not uncomfortable with the Director's motivations. I'm uncomfortable with the Director talking out of both sides of his mouth within a five-paragraph, three-page declaration after the lawsuit was filed. Again, it's not just the declaration, Your Honor. There's also when the plaintiffs were terminated, they were terminated pursuant to the Director's authority. And that happened on February 18th. There has... Plaintiffs haven't disputed the fact that the Director made this decision and the Director invoked his authority under the National Security Act, which is an authority that is unreviewable. The only thing that the district court cited... And I understand that, too. The only thing the district court cited to support the injunction here is the claim that the plaintiffs were likely to succeed on the merits of their claim, that they have a right to reassignment and appeal under the regulation. And they don't. Section 2A... That was the fundamental reliance. The court cited it both in the injunction and in its oral opinion, Regulation 4-16. Right. And 4-16 does not give them... It does not do what the district court said it does. I know. It simply doesn't do it on its face. You know, and I know I'm repeating myself here, but Section 2A says that the employees can be terminated without regard to the procedural requirements of this regulation. Section 2D, and that's for all cases. That's not just when it's the Director's decision. Section 2D, which deals with the Director, says that the Director's authority is not constricted by this regulation, that this... The Director's authority is in abrogation of any interests that might be created by this regulation, and also that the Director can make terminations without regard to any procedural steps set forth in this regulation. And so all of that suggests that even if you might think that the procedures for reduction in force would apply, they do not apply when the Director makes the decision. I don't... The CIA could not have been... And consistent with that, the regulation provides the procedure that the ultimate appeal is to the Director. Yes. And then you've got the clause that you just recited, which the Director can do it without any procedure. There's no procedure applicable to his decision. Right. So ultimately I think that the OPM memorandum is kind of a red herring in this case, because what matters for purposes of what the Director is permitted to do is that the statute gives him the discretion to make these determinations. He did, and plaintiffs do not dispute, that he did make this determination, and that's not arguable. In order to effectuate the directives of the OPM memorandum. In order to effectuate the executive order, and... And the direct... I'm reading from his declaration. And, yes, yes. He said both, Your Honor, but again, that doesn't change the fact... So it's not a red herring. It wasn't a red herring to the Director. So if the Director said I made the determination because the President has told me that he believes that there's national security concerns with this individual, that doesn't change the fact that it is still the Director's discretion, and it's his exercise of his own discretion when he deems it to be in the interest of the United States to terminate these people. The motivations don't matter and are not reviewable in this court. The Director made the determination, and so all we're left with here is a question of do these procedures under 2C and 2E apply, and I... The regulation itself is unambiguously clear. They don't. There is no procedure for, you know, reconsideration or appeal when the Director has deemed it necessary or advisable in the interest of the United States. And that's not... We're not breaking new law here. That's exactly what the D.C. Circuit held on remand in Webster v. Doe when the Supreme Court set down the procedural due process claim in that case, and the D.C. Circuit held, no, this regulation does not constrain the Director's authority. The procedures may apply when lower-level officials make these determinations, but it does not apply when the Director does, and so that's exactly... Because the regulation does not confine the Director in the way that the District Court found, the injunction must be vacated. All right. Thank you. We'll come down and greet counsel and proceed on to the last case. Thank you, Judge. Thank you, Judge. All right. All right. Yeah, we'll hear the next case. Unless you want to argue at the next case too.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Nicole G. Berner